UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-80036-Cr.-RYSKAMP/VITUNAC

UNITED STATES OF AMERICA,

vs.

**MANDI L. BOWMAN**

Defendant,
_____ /

## PLEA AGREEMENT

The United States of America and Mandi L. Bowman (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count 2 of the Indictment, which charges the defendant with conspiring to, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, knowing, and in reckless disregard of the fact, that such person had not obtained the age of 18 years and would be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1594(c).

2. The defendant is aware that the sentence will be imposed by the court after consideration of the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline

1

range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw his plea solely as a result of the sentence imposed.

3. The defendant understands and acknowledges that the maximum penalties the court may impose under Count 2 of the Indictment are: a statutory maximum term of imprisonment of life; a statutory maximum term of supervised release of Life; a fine of up to two hundred fifty thousand dollars ($250,000.00); and an order of restitution. The defendant also understands and acknowledges that, upon his release from imprisonment, she will be required to register as a sex offender in accordance with federal law and the laws of the state(s) where she lives, works, and/or attends school.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant for each count to which he is pleading guilty. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

## FACTUAL BASIS

5. If the case went to trial, the United States would prove, beyond a reasonable doubt, the

2

following facts, as well as others:

On February 2, 2012, B. L., the step-father of the juvenile victim contacted West Palm Beach Police Department to report that the juvenile victim was missing and believed to be in danger and engaged in prostitution activities. Officers conducted a search of on-line classified ads for escort and prostitution services in the West Palm Beach area and located an ad that they believed depicted the juvenile victim.

An officer, acting in an undercover capacity as a client or "john" interested in arranging a "date" with the juvenile, called the cellular phone number listed in the ad in an attempt to located and recover the juvenile victim. The juvenile victim agreed to meet the undercover officer and told the officer to meet her at the Days Inn located at 2300 45th Street, West Palm Beach, Florida, 33407 where she was staying.

The officer arrived at the Days Inn located at 2300 45th Street, West Palm Beach and made phone contact with the juvenile victim. The juvenile victim met the officer in the parking lot of the hotel. Officers approached the juvenile and explained their purpose to her. The juvenile victim confirmed her identity to the officers and advised that she was staying in Room 221. Officers further interviewed the juvenile who advised that she had been staying in Room 221 along with an adult male later identified as RASHAD EMON CLARK and an adult female, later identified as MANDI L. BOWMAN. The juvenile victim allowed officers in to Room 221 where she was staying. The juvenile advised that she had engaged in prostitution in the hotel room with other unknown individuals prior to the officers' arrival. Located in the room was luggage, including a black duffle bag, a black colored baseball cap, a laptop computer, and a used condom was observed lying to next to the safe.

3

Detective Lori Colombino interviewed the juvenile victim. The juvenile reported that she was approached by CLARK at a convenience store. CLARK gave the juvenile his cellular phone number and told her to contact him. The juvenile reported that CLARK's cellular phone, telephone number (305) 300-3784, was believed to be a Sprint cellular telephone and described it as a touch screen phone but not an iPhone. The juvenile victim reported her cellular phone number as (561) 932-7906.

CLARK discussed with the juvenile prostitution activities at the convenience store and had two adult prostitutes in the vehicle with him. The juvenile contacted CLARK by cellular phone the following day, and CLARK picked up the juvenile and drove her to the Days Inn located at 2300 45th Street, West Palm Beach, Florida. At the hotel, CLARK engaged in sexual intercourse with the juvenile victim. CLARK flushed the condom down the toilet and paid the juvenile victim $40.00. CLARK discussed prostitution proceeds and fees and the percentages of the money CLARK would retain. CLARK also advised the juvenile victim that she had to choose money or friends. CLARK advised the juvenile victim in setting a fee schedule for prostitution services, to include $150.00 for one half hour of vaginal sex, $250.00 for one hour of vaginal sex, $80.00 for oral sex, and told her to set her own price for anal intercourse. In addition, prior to men arriving at the hotel room on February 2, 2012, CLARK provided the juvenile victim with lubricant and condoms.

CLARK then dropped the juvenile victim off at another location.

The following day CLARK and the juvenile victim communicated by means of talking and text messaging via cellular phones. On February 2, 2012, CLARK again picked up the juvenile victim and brought her to Room 221 at the Days Inn located at 2300 45th Street, West Palm Beach, Florida. BOWMAN was present at the hotel and was in the room when CLARK and the juvenile victim again had sexual intercourse. CLARK reported to BOWMAN that the juvenile victim was

16 years old. On February 2, 2012, the juvenile victim had sexual contact with two men prior to the undercover officer's arrival. The juvenile victim had vaginal intercourse with one individual, and the second man masturbated in her presence. Both men exchanged money with the juvenile victim in exchange for the acts. The juvenile victim paid a portion of that money to CLARK.

BOWMAN was subsequently interviewed by agents. BOWMAN reported that her cellular phone number was (561) 232-0683, and it was the number she used to post ads online advertising herself for escort and prostitution activities.

She advised that she had only known the juvenile victim for a short period of time. BOWMAN was staying with an adult male known to her by the street name of "Shagg Dog." "Shagg Dog" and BOWMAN met the juvenile victim a few days prior to February 2, 2012. "Shagg Dog" offered the juvenile victim his phone number, and BOWMAN advised the juvenile victim called "Shagg Dog". Thereafter, "Shagg Dog" picked up the juvenile victim and brought her to the Days Inn, located at 2300 45th Street, West Palm Beach, Florida. BOWMAN was asked to leave the room for fifteen minutes. Due to the early morning hours, BOWMAN declined to leave the room where "Shagg Dog" and the juvenile victim were. BOWMAN covered her head with the covers and then heard sounds and noises consistent with sexual activity between "Shagg Dog" and the juvenile victim.

Thereafter, "Shagg Dog" asked BOWMAN to instruct the juvenile victim as how to engage in prostitution such as answering calls from potential customers and negotiating prices. BOWMAN taught the juvenile how to set up and schedule appointments, and how to negotiate prices with johns. BOWMAN took photographs of the juvenile and she created and posted the advertisement on Backpage.com to solicit for prostitution.

BOWMAN was shown a Florida Driver's License photograph of RASHAD EMON CLARK, date of birth September 15, 1978. BOWMAN positively identified CLARK as the person she knows as "Shagg Dog."

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this motion and recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense

conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to, committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant agrees that she shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that she will not protect any person or entity through false information or omission, that she will not falsely implicate any person or entity, and that he that she will not commit any further crimes.

9. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial

7

assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

10. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the government. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

## APPEAL WAIVER

11. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together

with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

12. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office, or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety, The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless

contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

|  |  |
|---|---|
| Date: 4/12/12 | WIFREDO A. FERRER<br>UNITED STATES ATTORNEY<br>By: _____<br>LOTHROP MORRIS<br>ASSISTANT UNITED STATES ATTORNEY |
| Date: 4/4/12 | By: _____<br>LORI BARRIST, ESQ.<br>ATTORNEY FOR DEFENDANT |
| Date: 4/4/12 | By: _____<br>MANDI L. BOWMAN<br>DEFENDANT |